UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEREK MILLS,

        Plaintiff,

        v.                                      Case No. 19-cv-1870-bhl

TORRIA VAN BUREN, et al.,

        Defendants.

## DECISION AND ORDER

      Plaintiff Derek Mills, who is serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated. Mills is proceeding on Eighth Amendment claims based on allegations that Defendants were deliberately indifferent to his serious mental health conditions. On December 23, 2020, Defendant Emmanuel Metayer moved for summary judgment. Dkt. No. 80. That motion is fully briefed and ready for the Court's decision.

      On December 28, 2020, Defendants Robert Drehmel, Jamie Engstrom, Torria Van Buren, and Maureen White (the State Defendants) separately moved for summary judgment. Dkt. No. 86. A couple weeks later, Mills filed a motion to extend his deadline to respond to the State Defendants' summary judgment motion. The Court granted his motion and ordered him to file his response materials by March 1, 2021. A week after the deadline, on March 8, 2021, Mills filed a motion for an extension of time. Dkt. No. 104. He asserts that his jailhouse lawyer lied to him and did not file his response to the State Defendants' summary judgment motion. He explains that

he is currently in segregation, but will return to general population on March 18, 2021. He asks for a thirty-day extension and asserts that this will be the last extension he asks for.

The Court will grant Mills' motion for an extension of time. The Court reminds Mills that, under Civil L.R. 7(d), a party's failure to respond to a motion is sufficient cause for the Court to grant the motion. If Mills does not respond to the State Defendants' summary judgment motion by April 1, 2021, the Court will grant the State Defendants' motion. Also, for the reasons discussed below, the Court will grant Metayer's summary judgment motion and dismiss Mills' claims against him.

## BACKGROUND

Mills asserts that he has had thoughts of self-harm and suicide for many years. Dkt. No. 83 at ¶1. He says he hears voices, fantasizes about hurting himself, and is excited by the sight of his own blood. *Id.* According to Mills, prior to his incarceration, he was diagnosed with various mental health conditions and prescribed medication to address his symptoms. *Id.* at ¶4. Mills asserts that he told Metayer, a nurse practitioner at Waupun, about his symptoms, prior diagnoses, and prescribed medications, but Metayer refused to acknowledge or investigate them. *Id.* at ¶6. Specifically, Mills says he told Metayer that he experienced "auditory hallucinations . . . triggered by environment and [his] poor ability to cope with life." Dkt. No. 95 at 2. He also told Metayer that he had been hospitalized for suicide attempts, which included him cutting his wrists. *Id.* at 1-2.

Metayer first saw Mills on January 22, 2019. Dkt. No. 83 at ¶11. Metayer asserts that he took Mills' history and diagnosed him with Adjustment Disorder with anxiety and depressed mood. *Id.* Metayer prescribed new medications for Mills, ordered a follow-up appointment in six weeks, and instructed Mills to tell staff if he had any suicidal ideations. *Id.* Mills told Metayer

that he had a history of hallucinations and a diagnosis of schizoaffective disorder, but Metayer says no such diagnosis was documented and he did not believe that to be the correct diagnosis. *Id.* at ¶12.

Metayer saw Mills again on March 19, 2019. Dkt. No. 83 at ¶13. Metayer continued to find no documentary or clinical proof of Mills' claim that he suffered from schizoaffective disorder. *Id.* Metayer issued a treatment plan continuing Mills' medication and monitoring of Mills. *Id.* He ordered a follow-up appointment in six weeks. *Id.* Metayer next met with Mills on May 1, 2019, and discussed Mills' symptoms and difficulties. *Id.* at ¶14. Mills again requested a diagnosis of schizoaffective disorder. *Id.* Upon examination, Metayer found Mills to be coherent, and Mills was not demonstrating psychotic or manic symptoms. *Id.* Metayer continued Mills on medication and instructed him to return in six to eight weeks and to be monitored closely. *Id.*

Metayer met with Mills again on June 20, 2019 and August 6, 2019, at which time he prescribed another medication. Dkt. No. 83 at ¶16. Metayer had additional follow-ups with Mills on October 9, 2019 and December 11, 2019, at which time Mills said he was doing well. *Id.* at ¶17. Mills demanded that he be prescribed bupropion and Seroquel. Dkt. No. 82-1 at 88. He told Metayer than an outside psychiatrist who had previously treated him told his sister that, "if he is not placed on these entitled medication bupropion and quetiapine he does not need to be placed on medication." *Id.* Mills insisted these were the only medications that could help with his psychotic episodes, and he requested that all his other medications be discontinued. *Id.* Metayer refused to change Mills' treatment based on his request or an outside consultant's opinion. *Id.* He strongly encouraged Mills to remain compliant with his treatment; however, upon Mills' insistence and withdrawal of consent, Metayer put a hold on his medications. Dkt. No. 83 at ¶18. He scheduled a follow-up for sooner than usual in order to monitor Mills' response. *Id.*

In a January 30, 2020 progress note, Metayer noted that Mills reported some improvement in his mood after his medications were reinstated at his request (the exact date the medications were reinstated is unclear). Dkt. No. 82-1 at 89. Metayer also noted that Mills remained fixated on getting bupropion because he believed it was the only medication that would treat his depression and mood. *Id.* Bupropion is a psychotropic medication that requires approval from the Department of Corrections before it can be prescribed. Dkt. No. 83 at ¶21. At Mills' request, Metayer requested approval to prescribe bupropion based on Mills' history of depression and mood disorder. Dkt. No. 82-1 at 91. Metayer's request was denied by a supervising doctor. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Mills asserts that Metayer was deliberately indifferent to his serious mental health condition when he refused to diagnose him with schizoaffective disorder and prescribe the medications of his choice. The Eighth Amendment prohibits medical staff from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual was deliberately indifferent to that condition." *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017) (quoting *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016)). The parties agree that Mills suffers from an objectively serious mental health condition, so the only question before the Court is whether Mills presents sufficient evidence for a jury to reasonably conclude that Metayer was deliberately indifferent to that condition. He does not.

The Seventh Circuit has explained that, within the universe of deliberate indifference cases exists a narrower category where prisoners assert, not that their conditions were ignored, but that they received constitutionally deficient treatment for their conditions. *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). "[T]hese cases are better framed 'not [as] deliberate indifference to a serious medical need,' but as a challenge to 'a deliberate decision by a doctor to treat a medical need in a particular manner.'" *Id.* (quoting *Snipes v DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). In those cases, courts are to "defer to a medical professional's treatment decision unless no minimally competent professional would have so responded under those circumstances." *Id.* (citations and internal quotations omitted). It has long been held that a "disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of

5

treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). This is because "there is no single 'proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Id.* (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)).

The record before the Court demonstrates that Metayer employed professional judgment in the treatment of Mills' mental health condition. Far from being deliberately indifferent to his condition, Metayer regularly met with Mills, prescribed medications, which he adjusted over time in consideration of Mills' responses, and made a diagnosis based on the symptoms Mills reported and Metayer observed. Decisions about diagnoses and medications are matters that require the application of medical expertise and judgment, which the evidence supports Metayer employed. Mills disagrees with Metayer's conclusions, but his disagreement is insufficient to establish an Eighth Amendment violation.

Mills also asserts that he told Metayer that other medical professionals had diagnosed him with schizoaffective disorder and a psychiatrist had opined to his sister that he should be prescribed bupropion. Mills did not provide Metayer with any documentation verifying his assertions, and it is well established that prison officials are not required to believe everything inmates tell them. *See Goetsch v. Ley*, 444 F. App'x 85, 88-89 (7th Cir. 2011). Regardless, even if Mills had provided verifying documentation, evidence that a different medical professional would have followed a different course of treatment is insufficient to sustain a deliberate indifferent claim. *Lockett*, 937 F.3d at 1024. Instead, to survive summary judgment, Mills had to present evidence showing a "substantial departure from accepted professional judgment." *Id.* Mills makes no such showing, particularly in the face of Metayer's evidence that other clinicians agreed with his treatment

decisions. Specifically, another clinician who tested Mills also declined to diagnose Mills as he desired, and Metayer's supervising doctor rejected his request to prescribe bupropion, a request Metayer made at Mills' insistence. *See* Dkt. No. 83 at ¶¶19, 21. The fact that other medical officials agreed with Metayer undermines Mills' unsupported assertion that Metayer's decisions substantially departed from accepted professional judgment.

Because no reasonable jury could find that Metayer acted with deliberate indifference to Mills' mental health condition, Metayer is entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Metayer's motion for summary judgment (Dkt. No. 80) is **GRANTED** and the claims against him are **DISMISSED**.

**IT IS FURTHER ORDERED** that Mills' motion for an extension of time to respond to the State Defendants' motion for summary judgment (Dkt. No. 104) is **GRANTED**. Mills must file his response materials by **April 1, 2021**. If Mills does not respond to the summary judgment motion by the deadline, the Court will grant the State Defendants' motion.

Dated at Milwaukee, Wisconsin this 12th day of March, 2021.

BY THE COURT:

s/ *Brett H. Ludwig*
Brett H. Ludwig
United States District Judge